UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

Sep 22, 2010

FILED
CLERK'S OFFICE

# BEFORE THE JUDICIAL PANEL
# ON MULTIDISTRICT LITIGATION

|  |  |  |
|---|---|---|
| IN RE POLYURETHANE FOAM ANTITRUST LITIGATION | ) ) ) ) ) | MDL No. 2196 |

## PLAINTIFF FOAM FACTORY, INC.'S RESPONSE TO
## PLAINTIFF PIAZZA'S CARPET & TILE SHOP, INC.'S MOTION FOR
## TRANSFER AND CONSOLIDATION OR COORDINATION

### I.     INTRODUCTION

Currently pending before this Panel is a motion for transfer and consolidation or coordination of several antitrust class actions arising from an alleged price-fixing conspiracy in the polyurethane foam industry.  Plaintiff Foam Factory, Inc. ("Foam Factory") has filed a putative class action in the Central District of California.[1]  Although Foam Factory agrees that assignment of these cases to a single judge will promote efficiency and is thus appropriate, it believes the cases should be transferred to the Central District of California rather than the Western District of North Carolina.  The reasons are that California is the largest producer of polyurethane foam in the United States, the potential transferee judge in the Central District of California is exceptionally well qualified to efficiently manage these cases, and the Central

---

[1] Foam Factory, Inc.'s Complaint is attached hereto as Exhibit A.

District of California offers logistical advantages over other potential transferee districts for the numerous parties, witnesses, and attorneys who are spread across this country.

## II.    ARGUMENT

Plaintiff Piazza's Carpet & Tile Shop, Inc. ("Piazza") has proposed the Western District of North Carolina as the transferee forum for this multidistrict litigation.  However, the Central District of California has at least as strong, if not stronger, nexus to the polyurethane foam industry.  In fact, Piazza's moving papers acknowledge that ***California has the largest share of the polyurethane foam industry in the country, even ahead of North Carolina***.  *See* Piazza's MPA at 7.

Moreover, of the 11 defendants, only one is headquartered in the Western District of North Carolina.[2]  *See* Exhibit A, ¶¶ 13-30.  Four of the defendants are headquartered in Canada, and the remaining defendants are spread across the country.  *See id*.  However, several of the defendants have a physical presence in the Central District of California.  For example, defendant Hickory Springs Manufacturing Company has a regional office in Los Angeles, California, defendant The Carpenter Group has a regional office in Riverside, California, and defendant Future Foam, Inc. has a pouring plant in Fullerton, California.  *See id*. ¶¶ 13, 18, 26.

Similarly, of the 19 known related actions, only one was filed by North Carolina residents.[3]  In comparison, four of the related cases were filed by plaintiffs located in California.[4]  Thus, the Central District of California will be a more convenient forum for many of the parties and witnesses in this litigation.

_____

[2] Defendant Hickory Springs Manufacturing Company is located in the Western District of North Carolina; defendant Vitafoam, Inc. is headquartered in High Point, North Carolina, which is in the *Middle* District of North Carolina.

[3] Plaintiffs T. Steven Lackey, Sharyn Lackey, and J. Keith Stokes, the plaintiffs in W.D. North Carolina Case No. 5:10-cv-00122, are residents of North Carolina.

[4] Plaintiffs Cambridge of California, Inc. (N.D. Ohio Case No. 3:10-cv-1858), Foam Empire, Inc. (W.D. North Carolina Case No. 5:10-cv-129), Foam Factory, Inc. (C.D. California Case No. 2:10-cv-6606), and Vicky's Furniture, Inc. (N.D. Ohio Case No. 3:10-cv-2089 JZ) are California residents.

As evidenced by the Panel Service List, the plaintiffs' attorneys in this case are as geographically diverse as the defendants. Although most of the defendants have not yet appeared through counsel, it is likely that many will retain antitrust practitioners from national law firms. In this regard, the Central District of California is preferable because many of the likely defense firms maintain offices in Los Angeles. Even for the parties and attorneys who are located outside of the two proposed transferee forums, the Central District of California has a logistical advantage because it is home to two international airports – Los Angeles International Airport and Los Angeles Ontario International Airport – as well as several domestic airports.

Additionally, the potential transferee judge in the Central District of California – the Honorable Margaret M. Morrow – is well qualified to efficiently handle this complex antitrust class action. A graduate of Bryn Mawr College and Harvard Law School, Judge Morrow has been an Article III judge since 1998. Prior to joining the federal bench, Judge Morrow was a litigation partner at Arnold & Porter, and she was the first woman President of the State Bar of California. Although Judge Morrow is currently assigned to one MDL proceeding – *In re Toys "R" Us - Delaware, Inc. Fair and Accurate Credit Transactions Act (FACTA) Litigation*, MDL No. 1980 – that case is stayed pending the appeal of an August 17, 2010 denial of class certification.[5] Judge Morrow is a member of the court's case management and assignment, and alternative dispute resolution committees.

/ / /

---

[5] The procedural history in the *Toys "R" Us* litigation demonstrates the efficiency with which Judge Morrow oversees her cases. The plaintiffs in that case filed a motion for class certification 17 months after the Panel issued its transfer order, and Judge Morrow issued her decision just over a month after the motion was submitted. *See* C.D. California Case No. 2:08-ml-01980, Docket Nos. 1, 43, 86, 100.

818790.1                                         3

### III.    CONCLUSION

For the foregoing reasons, plaintiff Foam Factory, Inc. requests that the Panel transfer this proceeding to the Central District of California, and the Honorable Margaret M. Morrow in particular, for consolidated or coordinated proceedings.


Dated:  September 21, 2010                                    Respectfully submitted,


                                                             _____
                                                             Bruce L. Simon
                                                             PEARSON, SIMON, WARSHAW &
                                                                PENNY, LLP
                                                             44 Montgomery Street, Suite 2450
                                                             San Francisco, CA 94104
                                                             Telephone:    (415) 433-9000
                                                             Facsimile:    (415) 433-9008
                                                             Email:        bsimon@pswplaw.com

                                                             *Attorneys for Plaintiff Foam Factory, Inc.*


818790.1                                      4

UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

Sep 22, 2010

FILED
CLERK'S OFFICE

# Exhibit A

1  BRUCE L. SIMON (Bar No. 96241)
       bsimon@pswplaw.com
2  JESSICA L. GRANT (Bar No. 178138)
       jgrant@pswplaw.com
3  PEARSON, SIMON, WARSHAW & PENNY, LLP
   44 Montgomery Street, Suite 2450
4  San Francisco, California 94104
   Telephone:   (415) 433-9000
5  Facsimile:    (415) 433-9008

6
   CLIFFORD H. PEARSON (Bar No. 108523)
7      cpearson@pswplaw.com
   DANIEL L. WARSHAW (Bar No. 185365)
8      dwarshaw@pswplaw.com
   PEARSON, SIMON, WARSHAW & PENNY, LLP
9  15165 Ventura Boulevard, Suite 400
   Sherman Oaks, CA 91403
10 Telephone:   (818) 788-8300
   Facsimile:    (818) 788-8104
11

12 [Additional counsel listed on signature page]
   *Counsel for Foam Factory, Inc., on behalf*
13 *of itself and all others similarly situated*

14          **UNITED STATES DISTRICT COURT**

15   **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

16 FOAM FACTORY, INC., on behalf of         CASE NO. CV10 6606 MMM VBKx
   itself and all others similarly situated,
17                                           **CLASS ACTION**
                Plaintiff,
18                                           **CLASS ACTION COMPLAINT**
        vs.
19                                           **DEMAND FOR JURY TRIAL**
   HICKORY SPRINGS
20 MANUFACTURING COMPANY;
   VALLE FOAM INDUSTRIES (1995),
21 INC.;
   DOMFOAM INTERNATIONAL,
22 INC.;
   THE CARPENTER COMPANY;
23 THE WOODBRIDGE GROUP;
   FLEXIBLE FOAM PRODUCTS, INC.;
24 SCOTTDEL, INC.;
   FXI FOAMEX INNOVATIONS, INC.;
25 FUTURE FOAM, INC.;
   VITAFOAM PRODUCTS CANADA
26 LIMITED;
   VITAFOAM, INC.,
27
                Defendants.
28

818023.2

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1  Plaintiff, Foam Factory, Inc. ("Plaintiff"), by its undersigned attorneys,

2  individually, and on behalf of the Class described below, files this class action

3  complaint for treble damages and other relief under the antitrust laws of the United

4  States against defendants Hickory Springs Manufacturing Company, Valle Foam

5  Industries (1995), Inc., Domfoam International, Inc., The Carpenter Company, The

6  Woodbridge Group, Flexible Foam Products, Inc., Scottdel, Inc., FXI Foamex

7  Innovations, Inc., Future Foam, Inc., Vitafoam Products Canada Limited and

8  Vitafoam, Inc. (collectively "Defendants").  Upon personal knowledge with respect

9  to its own acts, and upon information and belief with respect to all other matters,

10  Plaintiff alleges as follows:

## I. **INTRODUCTION**

12  1.  This lawsuit is brought as a class action on behalf of Plaintiff and all

13  individuals and entities who purchased Flexible Slab Polyurethane Foam and/or

14  Flexible Slab Polyurethane Foam Products (together "Flexible Slab Polyurethane

15  Foam" or "Flexible Slab") in the United States directly from Defendants, their

16  predecessors, successors, parents, or controlled subsidiaries and affiliates from at

17  least as early as November 1, 2005 to the present ("Class Period").  Flexible Slab

18  Polyurethane Foam is a commodity widely utilized for cushioning and insulation in

19  a variety of goods, including but not limited to, household furniture, bedding,

20  packaging and carpet padding.

21  2.  Defendants are the leading manufacturers and producers of Flexible

22  Slab Polyurethane Foam in the United States and have established market

23  dominance over the Flexible Slab Polyurethane Foam industry during the Class

24  Period.  During the Class Period, Defendants were presented with a variety of

25  economic conditions that made the Flexible Slab Polyurethane Foam market

26  susceptible to collusion.

27  3.  Plaintiff is informed, believes and thereon alleges, that Defendants

28  exploited these market conditions during the Class Period by entering into an

818023.2

2

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1 | unlawful combination and conspiracy, in order to artificially fix, raise, maintain or

2 | stabilize the price of Flexible Slab Polyurethane Foam sold in the United States.

3 |     4.    As a result of their antitrust conspiracy, Defendants have been able to

4 | charge artificially inflated prices for Flexible Slab Polyurethane Foam that cannot be

5 | explained or supported by market fundamentals and which establishes a plausible

6 | inference of conspiracy.  Specifically, between November 1, 2005 and the present,

7 | Defendants were able to implement unusual and unprecedented increases in the

8 | price for Flexible Slab Polyurethane Foam during periods in which input costs (i.e.

9 | transportation and materials) and demand for Flexible Slab Polyurethane Foam

10 | products were flat or decreasing.

11 |     5.    Plaintiff Foam Factory, Inc. purchased Flexible Slab Polyurethane

12 | Foam directly from one or more of the Defendants during the Class Period.  As a

13 | result of Defendants' unlawful conduct, Plaintiff and the Class have been forced to

14 | pay supra-competitive prices for Flexible Slab Polyurethane Foam and have suffered

15 | antitrust injury to their property or business.

16 | **II.  JURISDICTION AND VENUE**

17 |     6.    Plaintiff brings this action pursuant to Sections 4 and 16 of the Clayton

18 | Act, 15 U.S.C. §§ 15 and 26, for treble damages and other relief, including

19 | reasonable attorneys' fees and costs of suit, for Defendants' violations of Section 1

20 | of the Sherman Act, 15 U.S.C. § 1.

21 |     7.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§

22 | 1331 and 1337 and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

23 |     8.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)

24 | and (c) because, during the Class Period, one or more of the Defendants resided,

25 | transacted business, was found, and had agents in this district and because a

26 | substantial part of the events giving rise to Plaintiff's claims occurred in this district.

27 |     9.    This Court has *in personam* jurisdiction over each of the Defendants

28 | because, inter alia, each defendant: (a) transacted business in the United States; (b)

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1  directly or indirectly sold or marketed substantial quantities of Flexible Slab

2  Polyurethane Foam throughout the United States; (c) had substantial aggregate

3  contacts with the United States as a whole; and/or (d) was engaged in an illegal

4  price-fixing conspiracy that was directed at, and had the intended effect of causing

5  injury to, persons and entities residing in, located in, or doing business throughout

6  the United States, including in this district.

7  ### III.  INTERSTATE TRADE AND COMMERCE

8       10.    During the Class Period, Defendants produced, manufactured,

9  distributed and sold Flexible Slab Polyurethane Foam through the means of

10  interstate commerce in a continuous and uninterrupted flow to customers located in

11  states other than the states in which Defendants market and sell such products.

12       11.    Defendants, and each of them, have used instrumentalities of interstate

13  commerce to market and/or sell Flexible Slab Polyurethane Foam.

14  ### IV.  THE PARTIES

15  **A.**    **Plaintiff**

16       12.    Plaintiff Foam Factory, Inc. is a California corporation with its

17  principal place of business located in Rancho Dominguez, California.  During the

18  Class Period, Plaintiff purchased Flexible Slab Polyurethane Foam from one or

19  more of the Defendants.  As a result of the conspiracy herein alleged, the prices for

20  the Flexible Slab Polyurethane Foam that Plaintiff purchased from Defendants were

21  higher than they otherwise would have been in a competitive market.

22  **B.**    **Defendants**

23       13.    Defendant Hickory Springs Manufacturing Company ("Hickory

24  Springs") is a North Carolina corporation, with its headquarters located at 235 2nd

25  Avenue, N.W., Hickory, NC 28603 and has a regional office located at 4542 East

26  Dunham Street, Los Angeles, CA 90091.  During the Class Period, Hickory Springs,

27  either directly or through its affiliates, sold Flexible Slab Polyurethane Foam

28  throughout the United States.

818023.2

4

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

14.   Hickory Springs is one of the nation's largest integrated components manufacturers and suppliers for the furniture and bedding industries with more than 60 operating facilities in the United States and throughout the world.  The furniture industry is the largest segment of Hickory Springs' customer base.  With more than 160 flexible polyurethane foam formulations, Hickory Springs is one of the United States' largest producers of foam.[1]

15.   Defendant Valle Foam Industries (1995), Inc. ("Valle") is a privately owned and operated corporation headquartered at 4 West Dr., Brampton, Ontario L6T 2H7, Canada.  Valle manufactures polyurethane foam for the furniture, bedding, packaging, carpet, and children's toy industries.  During the Class Period, Valle, either directly or through its affiliates, sold Polyurethane Foam throughout the United States.

16.   Defendant Domfoam International, Inc. ("Domfoam") is headquartered at 8785 Langelier Boulevard, Montreal, Quebec, H1P 2C9, Canada.  During the Class Period, Domfoam, either directly or through its affiliates, sold Flexible Slab Polyurethane Foam throughout the United States.

17.   Domfoam is Canada's largest polyurethane foam manufacturer.[2]  Domfoam manufactures a diverse array of polyurethane foam products for various uses in the United States and Canada, including bedding, furniture, and mattresses.

18.   Defendant The Carpenter Company ("Carpenter") is a privately owned and operated company, with its headquarters located at 5016 Monument Avenue, Richmond, Virginia 23230.  Carpenter operates around 30 locations in the United States, including a regional office in Riverside, California.  During the Class Period, Carpenter, either directly or through its affiliates, sold Flexible Slab Polyurethane

[1] http://www.hickorysprings.com/2008/History.html
[2] http://www.domfoam.com

818023.2

5

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1  Foam throughout the United States.

2      19.    Carpenter is the largest manufacturer of "comfort cushioning" in the

3  world.[3]  Carpenter makes a wide variety of polyurethane foam and polyester fiber

4  comfort cushioning.  It operates through the following divisions: air filter media,

5  bedding, carpet cushion, chemicals, chemical systems, consumer products,

6  expanded polyurethane systems, flexible foam packaging furniture, molded

7  manufacturing, polyester fiber and tire products.[4]

8      20.    Defendant The Woodbridge Group ("Woodbridge") is a Canadian

9  corporation with its headquarters at 4240 Sherwoodtowne Boulevard, Mississauga,

10  Ontario, L4Z 2G6, Canada.  During the Class Period, Woodbridge, either directly or

11  through its affiliates, sold Flexible Slab Polyurethane Foam throughout the United

12  States.

13      21.    Defendant Flexible Foam Products, Inc. ("Flexible Foam") is a

14  privately owned and operated Ohio company, with its headquarters located at 200

15  East North Street, Spencerville, Ohio 45887, and has operations in multiple states,

16  including Texas, Indiana, Florida and Wisconsin.[5]  It is a subsidiary of Ohio

17  Decorative Products, Inc., also of Spencerville, Ohio.  During the Class Period,

18  Flexible Foam, either directly or through its affiliates, sold Flexible Slab

19  Polyurethane Foam throughout the United States.

20      22.    Flexible Foam is one of the world's largest suppliers of polyurethane

21  foam. It has been manufacturing polyurethane foam and rebond products for

22  customers in the bedding, flooring, furniture, packaging, and automotive industries

23  for over 50 years.

24  _____

25  [3] http://www.carpenter.com/

26  [4] *Id.*

27  [5] http://flexiblefoam.com/About/Locations.aspx

28

818023.2

6

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

23.     Defendant Scottdel, Inc. ("Scottdel") is a privately held corporation, headquartered at 400 Church Street, Swanton, Ohio 43558.  Scottdel manufactures bonded urethane carpet cushion, and offers "a complete line of commercial and residential bonded urethane cushions ranging in density from 3.5 pounds to 10 pounds per cubic foot."[6]  Scottdel specializes in the sale of polyurethane foam utilized in carpet padding.  During the Class Period, Scottdel, either directly or through its affiliates, sold Flexible Slab Polyurethane Foam throughout the United States.

24.     Defendant FXI Foamex Innovations, Inc. ("Foamex") is a privately owned and operated company, with its headquarters located at Rose Tree Corporate Center II, 1400 Providence Road, Suite 2000, Media, PA 19063-2076.[7]  During the Class Period, Foamex, either directly or through its affiliates, sold Flexible Slab Polyurethane Foam throughout the United States.

25.     FXI Foamex Innovations, Inc. is the successor in interest to Foamex International, Inc., and a leading producer of foam products for the home, healthcare, electronics, industrial, personal care and transportation markets.  Its products include finished goods, sub-assemblies, services and raw materials for OEMs, fabricators and retailers.  In the words of their website "foam is everywhere."[8]

26.     Defendant Future Foam, Inc. ("Future Foam") is a privately owned and operated company, with its headquarters located at 1610 Avenue N, Council Bluffs, IA 51501 and operates a pouring plant located at 2451 Cypress Way, Fullerton, CA

---

[6] http://www.scottdel.com/about_us.htm

[7] http://www.fxi.com/html/06_contact.php

[8] http://www.fxi.com/html/01_company.php

818023.2

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

92831.[9]  During the Class Period, Future Foam, either directly or through its affiliates, sold Flexible Slab Polyurethane Foam throughout the United States.

27.   Future Foam produces foam products for bedding, foam blocks, carpet cushion, furniture and packaging. It began producing foam in 1958 for the furniture industry and currently has five foam pouring and carpet cushion plants and fifteen fabrication plants. It is a leading supplier of bulk foam (buns) to foam fabricators throughout the country.

28.   Defendant Vitafoam Products Canada Limited ("Vitafoam Canada") is a privately owned and operated company, with its headquarters located at 150 Toro Road, North York, Ontario M3J 2A9, Canada.[10]  During the Class Period, Vitafoam Canada sold Flexible Slab Polyurethane Foam, either directly or through its affiliates, throughout the United States.

29.   Vitafoam Canada manufactures all types of flexible polyurethane foam for use in furniture, bedding and automotive applications, including packaging, medical, industrial and a full range of memory foams.[11]  It also produces latex mattresses and toppers.

30.   Defendant Vitafoam, Inc. ("Vitafoam, Inc.") is a privately owned and operated company, with its headquarters located at 2215 Shore Street, High Point, NC 27263.  During the Class Period, Vitafoam, Inc., either directly or through its affiliates, sold Flexible Slab Polyurethane Foam, throughout the United States.

31.   Vitafoam, Inc. manufactures a wide variety of flexible slab polyurethane products, including mattresses, furniture, and carpet padding. Vitafoam Canada and Vitafoam, Inc. are hereinafter collectively referred to

---

[9] http://futurefoam.com/location.asp

[10] http://www.vitafoam.ca/contact.php

[11] http://www.vitafoam.ca/index.php

1  collectively as "Vitafoam."

## V.  AGENTS AND CO-CONSPIRATORS

32.    Various other persons, firms and corporations, not named as Defendants in this complaint, have participated as co-conspirators with Defendants in the violations alleged herein, and aided, abetted and performed acts and made statements in furtherance of the conspiracy.

33.    The acts alleged against the Defendants in this Complaint were authorized, ordered, or done by their officers, agents, employees, or representatives, while actively engaged in the management and operation of Defendants' businesses or affairs.

34.    Each Defendant acted as the principal, agent, or joint venturer of, or for, other Defendants with respect to the acts, violations, and common course of conduct alleged by Plaintiff.

35.    Whenever this Complaint refers to an act, deed or transaction of a corporation or entity, the Complaint is alleging that the corporation or entity engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporation's or entity's business or affairs.

## VI.  CLASS ACTION ALLEGATIONS

36.    Plaintiff brings this action on behalf of itself and as a class action under the provisions of Rule 23(a) and (b)(2) & (b)(3) of the Federal Rules of Civil Procedure on behalf of all members of the following Class:

All persons (excluding governmental entities, Defendants, and the present and former parents, predecessors, subsidiaries and affiliates of the foregoing) who purchased Flexible Slab Polyurethane Foam directly from any of the Defendants at any time during the period from at least November 1, 2005 to the present.

37.    Plaintiff believes that there are hundreds or thousands of Class

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1  members as above described, the exact number and their identities being known by

2  Defendants.  The Class is so numerous and geographically dispersed that joinder of

3  all members is impracticable.

4      38.    There are questions of law and fact common to the Class, which

5  questions relate to the existence of the conspiracy alleged, and the type and common

6  pattern of injury sustained as a result thereof, including, but not limited to:

7          a.    Whether Defendants engaged in a combination or conspiracy to

8  raise, fix, maintain or stabilize the prices of Flexible Slab Polyurethane Foam sold in

9  the United States;

10          b.    The duration and extent of the combination or conspiracy alleged

11  herein;

12          c.    Whether the alleged combination or conspiracy violated Section

13  1 of the Sherman Act;

14          d.    Whether Defendants took steps to actively conceal the

15  combination or conspiracy from Plaintiff and other Class members;

16          e.    Whether Defendants' conduct caused the prices of Flexible Slab

17  Polyurethane Foam sold in the United States to be artificially high and non-

18  competitive;

19          f.    Whether Plaintiff and members of the Class were injured by

20  Defendants' conduct; and

21          g.    The appropriate measure of damages sustained by Plaintiff and

22  other members of the Class.

23      39.    These and other questions of law and fact common to the members of

24  the Class, including legal and factual issues relating to liability and damages,

25  predominate over any questions affecting only individual members.

26      40.    Plaintiff is a member of the Class, Plaintiff's claims are typical of the

27  claims of the Class members, and Plaintiff will fairly and adequately protect the

28  interests of the members of the Class.

41.     Plaintiff's interests are coincident with, and not antagonistic to, those of the other members of the Class.

42.     Plaintiff is represented by counsel who is competent and experienced in the prosecution of antitrust and class action litigation.

43.     A class action provides a fair and efficient method for the adjudication of this controversy.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications.

44.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Such treatment will permit a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would require.  Class treatment will also permit the adjudication of relatively small claims by many Class members who could not afford individually to litigate an antitrust claim such as that asserted herein.  There are no difficulties likely to be encountered in the management of this class action that would preclude its maintenance as a class action and no superior alternative exists for the fair and efficient adjudication of this controversy on behalf of Plaintiff and the members of the Class.

45.     Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the class as a whole.

## VII.  **FACTUAL ALLEGATIONS**

**A.      The Flexible Slab Polyurethane Foam Market & Industry Background**

46.     Polyurethane foam is a man-made plastic material that can exist in numerous states and is used in a large number of diversified applications, including mattresses, bedding, carpets, upholstered furniture, automobile seat cushions, insulation and packaging.

47.     Polyurethane foam can be either "flexible" or "rigid."  Flexible

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

polyurethane foam is typified by open cells which make the end product soft, light, resilient and breathable, and therefore ideal cushioning material for mattresses, beddings, furniture, and carpets. Rigid polyurethane foam has closed cells which translate to strong insulative properties, making it ideal for thermal insulation and application in roofing, wall insulation and appliances.

48. Flexible polyurethane foam can be produced through two manufacturing processes. Molded flexible polyurethane foam is manufactured utilizing a pour-in method of production where chemical compounds are deposited into custom molds in order to form a particular end product. Flexible Slab Polyurethane Foam is produced utilizing a more standardized manufacturing process whereby the flexible foam is produced in a continuous slab that can be cut into smaller pieces pursuant to customer specifications.

49. To make Flexible Slab Polyurethane Foam, raw materials, including polyols, isocyanates, additives and carbon dioxide, are held in stainless steel tanks, where they are agitated to remain fluid and heat exchangers adjust their temperatures to the levels that will allow them to react with each other. The materials are then pumped into pipes where they join in a chemical reaction to form polyurethane, which is then dispensed onto huge conveyor belts. As the polyurethane is dispensed, it is mixed with carbon dioxide which causes it to rise like bread. Rolls of baking paper guide the block of foam known as the "bun" as it continues to expand. Catalysts and surfactants can be added to boost the reactions and control the foaming process when making either rigid or flexible Polyurethane Foam. A wide range of additives, including stabilizers, colorants, dyes, fire retardants, and fungicides may be added to meet specific performance demands.

50. The chemical mixture is poured onto a moving conveyer with sides from 3 to 4 feet high where it reacts and expands into a slab. The continuous slab is then cut, stored, and allowed to cure for up to 24 hours, at which point it undergoes fabrication into useful shapes for a wide range of applications. This method is

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1  called the "slabstock" production process, and it is used to manufacture most foam

2  for furniture, cushioning, carpet cushion and bedding.

3       51.    Flexible Slab Polyurethane Foam is widely used for its qualities: it is

4  durable, safe, lightweight, resilient, quiet, virtually odorless and resistant to mildew

5  and other triggers of common allergies.  In furniture and bedding applications, there

6  are few substitutes for Flexible Slab Polyurethane Foam.  According to the Polyester

7  Foam Association, "short staple polyester fiber is often used instead of FPF

8  [Flexible Polyurethane Foam], as is cotton, but both alternative materials have poor

9  height recovery characteristics after compression. Steel springs also recover well but

10  must be insulated from the user with some type of cushioning material. Comparing

11  FPF to alternative materials in the areas of economics, comfort potential, ease of

12  use, and durability, there is not an acceptable substitute for FPF."

13  **B.**    **Characteristics of the Flexible Slab Polyurethane Foam Industry**

14          **Made It Ripe for Collusion**

15       52.    The Flexible Slab Polyurethane Foam industry has several

16  characteristics that facilitate a conspiracy, including but not limited to: (1) high

17  market concentration; (2) economic barriers to entry; (3) commoditization and

18  standardization; (4) inelasticity of demand; and (5) participation in trade and

19  business associations.

20      **1.**    **High Market Concentration in the Flexible Slab Polyurethane**

21           **Foam Industry**

22       53.    During the Class Period, the Flexible Slab Polyurethane Foam industry

23  was dominated by relatively few companies that marketed, sold and distributed

24  those products throughout the United States.  For example, in 2004, the Herfindahl-

25  Hirschman Index ("HHI"), a standard measure of concentrations for the Flexible

26  Slab Polyurethane Foam market, was 1,896, which at the time would have been

27

28

1  considered highly concentrated by the Federal antitrust enforcement agencies.[12]

2      54.    During this time, the named Defendants were responsible for

3  production of approximately eighty nine percent (89%) of the output share in the

4  Flexible Slab Polyurethane Foam market.  At the same time, none of the Defendants

5  had a market share that would make it economically feasible to charge supra-

6  competitive prices absent a collective agreement to conspire and fix the price of

7  Flexible Slab Polyurethane Foam.  This level of concentration provides an

8  environment in which the potential benefits of collusion are larger than in a more

9  concentrated market.  However, the number of firms needed to cartelize the vast

10  majority of industry output in Flexible Slab Polyurethane Foam is manageable.

11      55.    Plaintiff is informed, believes, and thereon alleges, that Defendants'

12  collective dominance and control over the Flexible Slab Polyurethane Foam market

13  motivated them to enter into conspiratorial agreements and facilitated their ability to

14  implement their conspiracy to fix the price of Flexible Slab Polyurethane Foam.

15      **2.**    **Economic Barriers to Entry**

16      56.    There are significant manufacturing and financial barriers to entry in

17  the Flexible Slab Polyurethane Foam industry.  Due to the wholesale nature of

18  purchaser demand for Flexible Slab Polyurethane Foam and the impact of

19  economies of scale, competition in the Polyurethane Foam market requires the

20  investment of millions of dollars on manufacturing, technology, transportation,

21  workforce and other overhead associated with the industry.  These barriers to entry

22  have made it extremely difficult for smaller manufacturers to compete with

23  Defendants and have facilitated the dominance of Defendants over the industry.

24

25  [12]  HHI is calculated by squaring the market share of each firm competing in a

26  market, and then summing the resulting numbers.  Under the newly released 2010
merger guidelines, an HHI of 1,896 would be considered Moderately Concentrated.

27  *See* http://www.ftc.gov/os/2010/08/100819hmg.pdf

28

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

57.     Therefore, the financial structure of the Flexible Slab Polyurethane Foam industry allowed Defendants to implement their antitrust conspiracy by eliminating competition and artificially stabilizing the prices of Flexible Slab Polyurethane Foam market without losing market share.

### 3.     Commoditization and Interchangeability of Flexible Slab Polyurethane Foam

58.     A "commodity product" is characterized as a product that is readily interchangeable and for which competition is primarily driven by price rather than other market pressures, such as branding and marketing.  The mass production and interchangeability of commodity products results not only in pressure for competitors to enter into conspiracies to fix and maintain prices, but serves as a mechanism to successfully adopt and implement such conspiracies.

59.     As set forth above, Flexible Slab Polyurethane Foam is a homogeneous commodity product produced via the generic "slabstock" manufacturing process.  As such, the Flexible Slab Polyurethane Foam supplied by one producer is interchangeable with the product supplied by other producers.

60.     Accordingly, Flexible Slab Polyurethane Foam customers make purchase decisions based largely, if not entirely, on price.  This commoditization and interchangeability of Flexible Slab Polyurethane Foam facilitated Defendants' conspiracy by making coordination on price much simpler than if Defendants had numerous distinct products with varying features.

### 4.     Inelasticity of Demand

61.     "Inelastic demand" is an economic term that is used to describe a situation in which the supply and demand for a good are unaffected when the price of that good or service changes.  When the demand for a product is inelastic, it ensures that the economic benefits of a collusive agreement to raise prices will not be dissipated by a resulting stark drop in the quantity demanded at the new, higher price.

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

62.     The Polyurethane Foam industry has a number of economic factors and conditions that make its price "inelastic."  Specifically, Flexible Slab Polyurethane Foam presents an array of qualities and characteristics including light weight, durability, breathability, and strong recovery that ensure it cannot be easily replaced by a competing product.  The inelastic nature of the Flexible Slab Polyurethane made the market susceptible to increased profits as a result of collusion and allowed Defendants to implement their conspiracy without jeopardizing their output.

5.     **Participation in Trade and Business Associations**

63.     Plaintiff is informed, believes, and thereon alleges, that during the Class Period, Defendants were members in a number of business and trade associations serving the Flexible Slab Polyurethane Foam industry, including the Polyurethane Foam Association, Alliance of Flexible Polyurethane Foam, and Carpet Cushion Council.

64.     The Polyurethane Foam Association was founded in 1980 and its members produce seventy percent (70%) of the flexible polyurethane foam in the United States.  The Polyurethane Foam Association states its mission, "is to educate customers and other groups about flexible polyurethane foam (FPF) and to promote its use in manufactured and industrial products."

65.     The Alliance of Flexible Polyurethane Foam was established as a joint program by the Center for the Polyurethanes Industry of the American Chemistry Council and the Polyurethane Foam Associations.  The Alliance of Flexible Polyurethane Foam aims to educate potential customers regarding the benefits of flexible polyurethane foam in furniture and carpet padding applications.

66.     The Carpet Cushion Council is a trade association that specialized in the education and representations of suppliers in the carpet padding segment of the Flexible Slab Polyurethane Foam industry.  Its members include defendants Scottdel, Foamex, Future Foam, Valle Foam, and Vitafoam.

67.     Plaintiff is informed, believes, and thereon alleges, that participation in

1  these aforementioned trade associations provided Defendants with the opportunity

2  to conduct conspiratorial meetings.  Plaintiff is further informed, believes, and

3  thereon alleges that Defendants' in person collusive pricing discussions frequently

4  took place at trade association meetings.

5  **C.     Defendants Exploited Market Conditions by Adopting and Implementing**

6  **an Antitrust Conspiracy**

7      68.    Plaintiff is informed, believes and thereon alleges, that during the Class

8  Period, Defendants exploited the aforementioned market conditions in order to

9  implement a conspiracy to fix, raise, maintain and stabilize the price at which such

10  products were sold in the United States at artificially inflated and anti-competitive

11  levels.  Defendants' collusion is evidenced by unusual price movements in the

12  market for Flexible Slab Polyurethane Foam during the Class Period that cannot be

13  explained by market fundamentals.  As a result of their anticompetitive conduct,

14  Defendants are the subject of ongoing criminal investigations by antitrust authorities

15  in the United States and throughout the world.

16      **1.    Defendants' Prices Cannot be Explained by Market Fundamentals**

17      69.    Prior to the Class Period, the Flexible Slab Polyurethane Foam industry

18  was characterized by stable pricing.  Between January 1996 through October 2005,

19  the price of Flexible Slab Polyurethane Foam remained stable, even in the face of

20  moderate fluctuations in the cost of inputs.

21      70.    As can be seen in Figure 1, below, the most striking example of this

22  phenomenon occurred in late 2000 and early 2001, where the Producer Price Index

23  ("PPI") for Flexible Slab Polyurethane Foam furniture and furnishings[13] actually

24  declined by four percent (4%), during a period when the combined price for Toluene

25

26  ───────────────

27  [13]  Flexible Slab Polyurethane furniture and furnishings are one of the largest end
use markets for Flexible Slab Polyurethane Foam.

28

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1 Diisocyanates ("TDI") and Polyether Polyol ("Polyether")[1] (the two predominant

2 input cost variables for Flexible Slab) increased by approximately nine percent

3 (9%).  (*See* Figure 1, *infra*.)

## FIGURE 1

### Polyurethane Foam Furniture PPI Compared to TDI and Polyether Polyol Export Prices to Canada and Furniture Shipment Values



*Note:*
*"TDI and Polyether Export Price to Canada" calculated using the typical input requirement ratio of 2:1 Polyol to TDI.*
*Sources:*
*U.S. International Trade Commission HTS 3907200000; 2929101500; Bureau of Labor Statistics PCU3261503261504; and U.S. Census Bureau M3 Timeseries 37S.*

21      71.     However, during the Class Period, this stability gave way to remarkable

22 increases in prices for Flexible Slab Polyurethane Foam which reached

23 unprecedented levels.  Indeed, between October and November 2005, prices of

24 Flexible Slab Polyurethane Foam furniture and furnishings increased by forty one

---

[1]  TDI and Polyether are the primary physical components of Flexible Slab
Polyurethane Foam, comprising virtually all of the physical inputs of manufacturers.

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1  percent (41%).  (*See* Figure 1, *supra*).

2      72.     While this particular increase in price was almost contemporaneous

3  with a sharp increase in TDI and Polyether prices, it was inconsistent with long-

4  standing stability of output prices in the face of input cost fluctuation.  Furthermore,

5  the price increases in October and November of 2005 cannot be solely attributed to

6  rising input costs, because the increase in price of Flexible Slab Polyurethane Foam

7  during this period far outpaced the corresponding rise in the combined price of TDI

8  and Polyether. Figure 2, below, depicts this highly unusual pricing behavior during

9  the Class Period in greater detail.

## FIGURE 2

### Polyurethane Foam Furniture PPI Compared to TDI and Polyether Polyol Export Prices to Canada and Furniture Shipment Values



Note:
"TDI and Polyether Export Price to Canada" calculated using the typical input requirement ratio of 2:1 Polyol to TDI.
Sources:
U.S. International Trade Commission HTS 3907200000; 2929101500; Bureau of Labor Statistics PCU3261503261504; and U.S. Census Bureau M3 Timeseries 37S.

27     73.     Even after input costs stabilized, Defendants' prices for Flexible Slab

28

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1  Polyurethane Foam again increased sharply several times during the Class Period –
2  from April 2006 through October 2006, from April 2008 through August 2008, and
3  from May 2009 through at least early 2010.  (*See* Figures 1 & 2, *supra*).

4      74.     Moreover, during the Class Period, demand for Flexible Slab
5  Polyurethane Foam was flat or decreasing, which should have resulted in lower, not
6  higher, prices.  Indeed, by 2009, Defendants faced a market that was subject to
7  declining input prices and reduced demand for Flexible Slab Polyurethane Foam.
8  Nevertheless, Defendants' prices defied conventional market behavior, and actually
9  increased during the second half of 2009.  (*See* Figures 1 & 2, *supra*).

10     75.     These sharp price increases cannot be explained by changes in raw
11  material prices, shifts in demand, or conscious parallel pricing.  Indeed, while the
12  cost of certain inputs increased during the Class Period, the amount of those
13  increases was not sufficient to support the very large price increases for Flexible
14  Slab Polyurethane Foam.

15     76.     Defendants coordinated price increase announcements to effectuate
16  their conspiracy.  For example, Defendants announced price increases of thirteen
17  and one-half percent (13.5%) in 2007, at least twenty percent (20%) in 2008, twenty
18  percent (20%) in 2009 and twenty percent (20%) in 2010.  By reason of these price
19  increase announcements, Defendants were able to implement price increases and/or
20  stabilize the prices in the market for Flexible Slab Polyurethane Foam.

21     77.     Upon information and belief, these coordinated price increases and
22  irrational price movements were the result of conspiratorial discussions regarding
23  price fixing and market allocation of Flexible Slab Polyurethane Foam between
24  Defendants and their co-conspirators.  These collusive discussions among
25  competitors were conducted primarily by means of telephone, electronic mail, and
26  in-person meetings and resulted in understandings and agreements on most price
27  increases for Flexible Slab Polyurethane Foam going back to at least November
28  2005.

1

2. **Government Antitrust Investigations**

2    78.    On or about July 27, 2010, news organizations reported that United

3  States FBI agents raided the offices of defendant Carpenter in connection with its

4  potential involvement in a world-wide price fixing and market allocation conspiracy

5  in the market for polyurethane foam.  News services reported that FBI agents took

6  boxes and bags of information out of the building and forced several of its offices to

7  close.  One employee told a local television station that FBI agents would not let her

8  get next to her computer and an IT employee stated, "company supervisors sent

9  them home by departments and they were the last to leave."

10    79.    The raid conducted in Virginia was part of a coordinated worldwide

11  probe in the polyurethane foam market conducted by United States, European Union

12  and Canadian competition regulators.

13    80.    On August 3, 2010, the European Commission ("EC") confirmed in a

14  press release that on July 27, 2010, the EC carried out unannounced inspections at

15  the premises of producers of polyurethane foam for potential violations of European

16  Union ("EU") Treaty Rules, which, inter alia, prohibit certain anti-competitive

17  practices.  The inspections were carried out in several EU member states, including

18  Belgium, United Kingdom and Austria.

19    81.    The United States Department of Justice, through a spokesperson, also

20  confirmed the raid and stated, "they can't comment on the case because it's sealed

21  under a judge's court order."

22    82.    Separately, Carpenter confirmed the various government investigations,

23  stating, "[i]n connection with a multi-jurisdiction investigation of the pricing

24  practices related to polyurethane foam in North America and Europe, the US

25  Government, the European Commission and the Ontario Commissioner of

26  Competition have required that several manufacturers of polyurethane foam,

27  including Carpenter Co. and several of its subsidiaries, produce certain information

28  and documents.  Carpenter Co. is being fully responsive and cooperative with these

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1  entities to facilitate their review."

2  ## VIII.  EQUITABLE TOLLING

3  83.    Defendants engaged in the successful combination or conspiracy to
4  raise and fix prices, which had the effect of increasing prices to an artificially high
5  level, and which by its nature was inherently self-concealing.  During the Class
6  Period, Plaintiff had no knowledge of Defendants' unlawful combination or
7  conspiracy.

8  84.    Defendants' wrongful conduct was carried out in part through means
9  and methods which were designed to avoid detection, and which, in fact,
10  successfully precluded detection.

11  85.    Although Plaintiff exercised due diligence throughout the Class Period,
12  it did not and could not have discovered Defendants' unlawful combination or
13  conspiracy at any earlier date.  Defendants undertook affirmative acts of
14  concealment of their combination or conspiracy, including their attendance at secret
15  meetings, and engaging in secret conversations concerning the allocation of markets
16  and customers, and price increases for Flexible Slab Polyurethane Foam.

17  86.    In addition, Defendants wrongfully concealed their illegal conduct from
18  Plaintiff and other members of the Class by issuing or causing to be issued public
19  statements which falsely attributed price increases for Flexible Slab Polyurethane
20  Foam to factors other than Defendants' illegal scheme and unlawful conduct.

21  87.    Because their combination or conspiracy was kept secret by
22  Defendants, Plaintiff was unaware of the anticompetitive conduct concerning
23  Flexible Slab Polyurethane Foam that was secretly agreed upon as alleged herein.  It
24  was not until at least July 27, 2010, when it was disclosed for the first time that there
25  was a worldwide investigation into the market for Flexible Slab Polyurethane Foam,
26  that Plaintiff became aware, or could have become aware with the exercise of
27  reasonable diligence, of Defendants' anticompetitive conduct.

28  88.    As a result of the concealment of the conspiracy, Plaintiff asserts the

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1 | tolling of the applicable statute of limitations affecting the right of action by
2 | Plaintiff.

3 | ## IX. **CLAIM FOR VIOLATIONS OF THE SHERMAN ACT (15 U.S.C. § 1)**

4 | 89.    Plaintiff incorporates by reference, as if fully set forth herein, the
5 | allegations contained in the preceding paragraphs of this complaint.

6 | 90.    Beginning at least as early as November 1, 2005 and continuing to the
7 | present, the exact dates being currently unknown to Plaintiff, Defendants entered
8 | into and engaged in a combination or conspiracy in unreasonable restraint of trade
9 | and commerce in violation of Section 1 of the Sherman Act.

10 | 91.    Pursuant to this combination or conspiracy, Defendants agreed to fix,
11 | raise, maintain and stabilize prices of Flexible Slab Polyurethane Foam sold in the
12 | United States.

13 | 92.    In addition, pursuant to their combination or conspiracy, Defendants
14 | have implemented price increases for Flexible Slab Polyurethane Foam sold in the
15 | United States.

16 | 93.    For the purpose of formulating and effectuating their combination or
17 | conspiracy, Defendants engaged in anti-competitive activities, the purpose and
18 | effect of which was to artificially fix, raise, maintain or stabilize the prices for
19 | Flexible Slab Polyurethane Foam sold in the United States.  Defendants' anti-
20 | competitive conduct included:

21 | a.    Participating in meetings and conversations to discuss the
22 | Flexible Slab Polyurethane Foam market in the United States and elsewhere;

23 | b.    Agreeing to refrain and, in fact, refraining from competing
24 | among themselves with respect to the sale of Flexible Slab Polyurethane Foam in
25 | the United States;

26 | c.    Communicating with each other regarding the prices to be
27 | charged for Flexible Slab Polyurethane Foam;

28 | d.    Agreeing to charge prices at certain levels and otherwise raise,

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1  fix, maintain or stabilize the prices of Flexible Slab Polyurethane Foam sold in the
2  United States and elsewhere;

3         e.      Agreeing to divide and allocate customers and markets in which
4  Flexible Slab Polyurethane Foam is sold;

5         f.      Exchanging information about Flexible Slab Polyurethane Foam
6  prices and sales volumes;

7         g.      Monitoring and implementing the arrangements among cartel
8  members; and

9         h.      Selling Flexible Slab Polyurethane Foam to Plaintiff and
10 members of the Class in the United States at the agreed upon and supra-competitive
11 prices.

12       94.     Defendants' combination or conspiracy had the following effects,
13 among others:

14       a.      Competition in the sale of Flexible Slab Polyurethane Foam by
15 Defendants has been restrained, suppressed and/or eliminated;

16       b.      Prices for Flexible Slab Polyurethane Foam sold by Defendants
17 in the United States have been raised, fixed, maintained or stabilized at artificially
18 high and non-competitive levels; and

19       c.      Plaintiff and members of the Class have been deprived of the
20 benefit of free and open competition in the market for Flexible Slab Polyurethane
21 Foam sold in the United States.

22       95.     Defendants' combination or conspiracy to unreasonably restrain trade
23 and commerce by artificially reducing or eliminating competition in the United
24 States for Flexible Slab Polyurethane Foam constitutes a violation of Section 1 of
25 the Sherman Act (15 U.S.C. § 1).

26       96.     As a result of Defendants' unlawful conduct, prices for Flexible Slab
27 Polyurethane Foam were raised, fixed, maintained and/or stabilized in the United
28 States at a level higher than they would have been in the absence of the anti-

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1  competitive conduct alleged in this Complaint.

2     97.   As a result of Defendants' unlawful conduct, Plaintiff and the other

3  members of the Class have been injured in their businesses and property in that they

4  have paid more for Flexible Slab Polyurethane Foam than they otherwise would

5  have paid in the absence of Defendants' unlawful conduct.

6     98.   As a direct and proximate result of Defendants' scheme, Plaintiff and

7  the members of the Class have been injured and financially damaged in their

8  respective businesses and property, in amounts which are presently undetermined.

9  Plaintiff's injuries consist of paying higher prices to purchase Flexible Slab

10 Polyurethane Foam than it would have paid absent Defendants' conduct. Plaintiff's

11 injuries are of the type the antitrust laws were designed to prevent and flow from

12 that which makes Defendants' conduct unlawful.

## X. **REQUEST FOR RELIEF**

14 **WHEREFORE**, Plaintiff prays that the Court enter judgment on its behalf

15 and on behalf of the Class herein, adjudging and decreeing that:

16    1.   This action may proceed as a class action, with Plaintiff as the

17 designated Class Representative and its counsel as Class Counsel;

18    2.   Defendants have engaged in a contract, combination, and conspiracy in

19 violation of Section 1 of the Sherman Act (15 U.S.C. § 1), and Plaintiff and the

20 Class have been injured in their businesses and property as a result of Defendants'

21 violations;

22    3.   Plaintiff and the members of the Class recover damages sustained by

23 them, as provided by the federal antitrust laws, and that a joint and several judgment

24 in favor of Plaintiff and the Class be entered against the Defendants in an amount to

25 be trebled in accordance with such laws;

26    4.   Defendants, their subsidiaries, affiliates, successors, transferees,

27 assignees, and the respective officers, directors, partners, agents, and employees

28 thereof and all other persons acting or claiming to act on their behalf be permanently

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

1  enjoined and restrained from continuing and maintaining the combination,

2  conspiracy, or agreement alleged herein;

3      5.    Plaintiff and the members of the Class be awarded pre-judgment and

4  post-judgment interest, and that such interest be awarded at the highest legal rate

5  from and after the date of service of the initial Complaint in this action;

6      6.    Plaintiff and the members of the Class recover their costs of this suit,

7  including reasonable attorneys' fees as provided by law; and

8      7.    Plaintiff and the members of the Class receive such other or further

9  relief as may be just and proper.

10

11  DATED:  September 2, 2010         By: _____

12      Bruce L. Simon (Bar No. 92641)
       Jessica L. Grant (Bar No. 178138)

13      PEARSON, SIMON, WARSHAW &
       PENNY, LLP

14      44 Montgomery Street, Suite 2450
       San Francisco, CA 94104

15      Telephone:  (415) 433-9000
       Facsimile:   (415) 433-9008

16

17      Clifford H. Pearson (Bar No. 108523)
       Daniel L. Warshaw (Bar No. 185365)

18      Bobby Pouya (Bar No. 245527)
       PEARSON, SIMON, WARSHAW &
       PENNY, LLP

19      15165 Ventura Boulevard, Suite 400

20      Sherman Oaks, CA 91403
       Telephone:  (818) 788-8300

21      Facsimile:   (818) 788-8104

22      Eric George (Bar No. 166403)
       egeorge@bwgfirm.com

23      BROWNE WOODS GEORGE LLP
       2121 Ave of the Stars 24th FL

24      Los Angeles, CA 90067
       Telephone:  (310) 274-7100

25      Facsimile:   (310) 275-5697

26

27      Counsel for Plaintiff and the Proposed
       Direct Purchaser Class

28

_(left margin, vertical text)_ PEARSON, SIMON, WARSHAW & PENNY, LLP  44 MONTGOMERY STREET, SUITE 2450  SAN FRANCISCO, CALIFORNIA 94104

818023.2

26

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all of the claims asserted in this Complaint so triable.

DATED: September 2, 2010

By: _____

Bruce L. Simon (Bar No. 92641)
Jessica L. Grant (Bar No. 178138)
PEARSON, SIMON, WARSHAW &
PENNY, LLP
44 Montgomery Street, Suite 2450
San Francisco, CA 94104
Telephone: (415) 433-9000
Facsimile:   (415) 433-9008

Clifford H. Pearson (Bar No. 108523)
Daniel L. Warshaw (Bar No. 185365)
Bobby Pouya (Bar No. 245527)
PEARSON, SIMON, WARSHAW &
PENNY, LLP
15165 Ventura Boulevard, Suite 400
Sherman Oaks, CA 91403
Telephone: (818) 788-8300
Facsimile:   (818) 788-8104

Eric George (Bar No. 166403)
   egeorge@bwgfirm.com
BROWNE WOODS GEORGE LLP
2121 Ave of the Stars 24th FL
Los Angeles, CA 90067
Telephone: (310) 274-7100
Facsimile:   (310) 275-5697

Counsel for Plaintiff and the Proposed
Direct Purchaser Class

PEARSON, SIMON, WARSHAW & PENNY, LLP
44 MONTGOMERY STREET, SUITE 2450
SAN FRANCISCO, CALIFORNIA 94104

818023.2

27

UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

Sep 22, 2010

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

|  |  |  |
|---|---|---|
| IN RE POLYURETHANE FOAM ANTITRUST LITIGATION | ) ) ) ) ) | MDL No. 2196 |

## PROOF OF SERVICE

I hereby certify that a copy of Plaintiff Foam Factory, Inc.'s Response to Plaintiff Piazza's Carpet & Tile Shop, Inc.'s Motion for Transfer and Consolidation or Coordination was served via First Class U.S. mail, postage prepaid on this 21st day of September 2010 on the following:

| | |
|---|---|
| Larry S. McDevitt<br>David M. Wilkerson<br>THE VAN WINKLE LAW FIRM<br>11 North Market Street<br>Asheville, NC 28801<br>Telephone: 828-258-2991<br>Fax: 828-255-0255<br>Email: dwilkerson@vwlawfirm.com<br>**Counsel for Plaintiffs: Piazza's Carpet and Tile Shop, Inc.**<br>**Western District of North Carolina, Statesville Division**<br>**Case No.: 10-cv-111;**<br><br>**Jamestown Mattress Co., Inc.**<br>**Western District of North Carolina, Statesville Division**<br>**Case No.: 10-cv-113;** | Eugene A. Spector<br>Jeffrey L. Kodroff<br>Jeffrey J. Corrigan<br>SPECTOR ROSEMAN KODROFF & WILLIS, P.C.<br>1818 Market Street, Suite 2500<br>Philadelphia, PA 19103<br>Telephone: 215-496-0300<br>Fax: 215-496-6611<br>Email: espector@srkw-law.com<br>**Counsel for Plaintiff: Martin Greenbaum Company, Inc.**<br>**Western District of North Carolina, Statesville Division**<br>**Case No.: 10-cv-118** |

| | |
|---|---|
| **Thompson Trading Co.**<br>**Western District of North Carolina,**<br>**Statesville Division**<br>**Case No.: 10-cv-114;**<br><br>**V & M, Inc. d/b/a Costa International**<br>**Western District of North Carolina,**<br>**Statesville Division**<br>**Case No.: 10-cv-116;**<br><br>**Martin Greenbaum Company, Inc.**<br>**Western District of North Carolina,**<br>**Statesville Division**<br>**Case No.: 10-cv-118** | |
| John Murdock<br>Jeff Goldenberg<br>MURDOCK GOLDENBERG SCHNEIDER<br>& GROH, L.P.A.<br>35 East Seventh Street, Suite 600<br>Cincinnati, OH 45202-2446<br>Telephone: 513-345-8291<br>Fax: 248-652-2852<br>E-mail: jmurdock@mgsglaw.com<br>**Counsel for Plaintiff: Martin Greenbaum**<br>**Company, Inc.**<br>**Western District of North Carolina,**<br>**Statesville Division**<br>**Case No.: 10-cv-118** | E. Powell Miller<br>David H. Fink<br>THE MILLER LAW FIRM, P.C.<br>The Miller Building<br>950 West University Drive, Suite 300<br>Rochester, MI 48307<br>Telephone: 248-841-2200<br>Fax: 513-345-8294<br>E-mail: epm@millerlawpc.com<br>**Counsel for Plaintiff: Martin Greenbaum**<br>**Company, Inc.**<br>**Western District of North Carolina,**<br>**Statesville Division**<br>**Case No.: 10-cv-118** |
| William E. Moore<br>GRAY, LAYTON, KERSH, SOLOMON,<br>SIGMON, FURR & SMITH PA<br>516 South New Hope Road<br>P.O. Box 2636<br>Gastonia, NC 28053-2636<br>Telephone: 704-865-4400<br>Fax: 704-866-8010<br>bmoore@gastonlegal.com<br>**Counsel for Plaintiff: Shore-Line Carpet**<br>**Supplies, Inc.**<br>**Western District of North Carolina**<br>**Case No.: 10-cv-115** | Bernard Persky<br>Hollis L. Salzman<br>Kellie Lerner<br>Morissa R. Falk<br>LABATON SUCHAROW LLP<br>140 Broadway<br>New York, NY 10005<br>Telephone: 212-907-0700<br>Fax: 212-818-0477<br>bpersky@labaton.com<br>hsalzman@labaton.com<br>klerner@labaton.com<br>**Counsel for Plaintiff: Shore-Line Carpet**<br>**Supplies, Inc.**<br>**Western District of North Carolina**<br>**Case No.: 10-cv-115** |

Daniel Brockett
Stephen Neuwirth
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: 212-849-7000
Fax: 212-849-7100
**Counsel for Plaintiff: Cambridge of
California, Inc.
Northern District of Ohio, Western
Division
Case No.: 10-cv-1858**

Bruce E. Van Dalsem
Andrea L. Hertzfeld
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: 213-443-3000
Fax: 213-443-3100
**Counsel for Plaintiff: Cambridge of
California, Inc.
Northern District of Ohio, Western
Division
Case No.: 10-cv-1858**

Stephen A. Swedlow
KOREIN TILLERY
205 N. Michigan Ave., Suite 1940
Chicago, IL 60601
Telephone: 312-899-5063
Fax: 312-641-9555
**Counsel for Plaintiff: Cambridge of
California, Inc.
Northern District of Ohio, Western
Division
Case No.: 10-cv-1858**

Brian Strange
Gretchen Carpenter
STRANGE & CARPENTER
12100 Wilshire Blvd, Suite 1900
Los Angeles, California 90025
Telephone: 310-207-5055
Fax: 310-826-3210
**Counsel for Plaintiff: Cambridge of
California, Inc.
Northern District of Ohio, Western
Division
Case No.: 10-cv-1858**

Linda P. Nussbaum
John D. Radice
NUSSBAUM LLP
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: 212-838-7797
Fax: 212-838-7745
lnussbaum@nussbaumllp.com
jradice@nussbaumllp.com
**Counsel for Plaintiff: Thompson Trading
Co.
Western District of North Carolina,
Statesville Division
Case No.: 10-cv-114**

Michael Criden
Kevin Love
CRIDEN & LOVE, P .A.
7301 S.W. 57th Court, Suite 515
South Miami, Florida 33143
Telephone: 305-357.9000
Fax: 305-357.9050
klove@cridenlove.com
**Counsel for Plaintiff: Thompson Trading
Co.
Western District of North Carolina,
Statesville Division
Case No.: 10-cv-114**

Ken Zylstra
Peter Kohn
FARUQI & FARUQI, LLP
101 Greenwood Avenue, Suite 600
Jenkintown, PA 19046
Telephone: 215-277-5770

Barry Taus
Kevin Landau
TAUS, CEBULASH & LANDAU, LLP
80 Maiden Lane, Suite 1204
New York, NY 10038
Telephone: 212-931.0704

| | |
|---|---|
| Fax: 215-277-5771<br>kzylstra@faruqilaw.com<br>pkohn@faruqilaw.com<br>**Counsel for Plaintiff: Thompson Trading Co. Western District of North Carolina, Statesville Division**<br>**Case No.: 10-cv-114** | btaus@tcllaw.com<br>klandau@tcllaw.com<br>**Counsel for Plaintiff: Thompson Trading Co.**<br>**Western District of North Carolina, Statesville Division**<br>**Case No.: 10-cv-114** |
| Bryan L. Clobes<br>Ellen Meriwether<br>CAFFERTY FAUCHER<br>1717 Arch St., Suite 3610<br>Philadelphia, PA 19103<br>Telephone: 215-864-2800<br>Fax: 215-864-2810<br>**Counsel for Plaintiff: Thompson Trading Co.**<br>**Western District of North Carolina, Statesville Division**<br>**Case No.: 10-cv-114** | Marc A. Wites<br>WITES & KAPETAN, P.A.<br>4400 North Federal Highway<br>Lighthouse Point, FL 33064<br>Telephone: 954-570-8989<br>Fax: 954-354-0205<br>mwites@wklawyers.com<br>**Counsel for Plaintiff: Thompson Trading Co.**<br>**Western District of North Carolina, Statesville Division**<br>**Case No.: 10-cv-114** |
| Vincent J. Esades<br>HEINS MILLS & OLSON, P.L.C.<br>310 Clifton Avenue<br>Minneapolis, MN 55403<br>Telephone: 612-338-4605<br>vesades@heinsmills.com<br>**Counsel for Plaintiff: V & M, Inc. d/b/a Costa International**<br>**Western District of North Carolina, Statesville Division**<br>**Case No.: 10-cv-116** | Gregory P. Hansel<br>PRETI, FLAHERTY, BELIVEAU & PACHIOS, LLP<br>One City Center<br>P.O. Box 9546<br>Portland, ME 04112-9546<br>Telephone: 207-791-3000<br>Fax: 207-791-3111<br>ghansel@preti.com<br>**Counsel for Plaintiff: V & M, Inc. d/b/a Costa International**<br>**Western District of North Carolina, Statesville Division**<br>**Case No.: 10-cv-116** |
| David W. Zoll<br>ZOLL, KRANZ & BORGESS, LLC<br>6620 W. Central Avenue, Suite 200<br>Toledo, Ohio 43617<br>Telephone: 419-841-9623<br>Fax: 419-841-9719<br>david@toledolaw.com<br>**Counsel for Plaintiff: Atlantic Feather & Foam, Inc.**<br>**Northern District of Ohio, Western Division**<br>**Case No.: 10-cv-1867** | Stanley D. Bernstein<br>Ronald J. Aranoff .<br>Tania T. Taveras<br>BERNSTEIN LIEBHARD LLP<br>10 East 40th Street, 22nd Floor<br>New York, NY 10016<br>Telephone: 212-779-1414<br>Fax: 212-770-3218<br>**Counsel for Plaintiff: Atlantic Feather & Foam, Inc.**<br>**Northern District of Ohio, Western Division Case No.: 10-cv-1867** |

| | |
|---|---|
| Michael D. Hausfeld<br>HAUSFELD, LLP<br>1700 K Street, NW, Suite 650<br>Washington, DC 20006<br>Telephone: 202-540-7200<br>Fax: 202-540-7201<br>Email: hausfeld@hausfeldllp.com<br>**Counsel for Piazza's Carpet & Tile Shop, Inc.** | Steven A. Asher<br>WEINSTEIN KITCHENOFF & ASHER LLC<br>1845 Walnut Street<br>Suite 1100<br>Philadelphia, PA 19103<br>Telephone: 215-545-7200<br>Fax: 215-545-6535<br>**Counsel for Sharyn Lackey and J. Keith Stokes** |
| Robert G. Eisler<br>GRANT & EISENHOFER<br>485 Lexington Avenue<br>New York, NY 10017<br>Telephone: 646-722-8500<br>Fax: 646-722-8501<br>Email: reisler@gelaw.com<br>**Counsel for Pandolfi House of Carpets, Inc.** | Shepard Goldfein<br>SKADDEN ARPS SLATE MEAGHER & FLOM LLP<br>Four Times Square<br>New York, NY 10036<br>Telephone: 212-735-3610<br>Fax: 917-777-36103<br>**Counsel for Valle Foam Industries, Inc. and Domfoam International, Inc.** |
| Frank A. Hirsch<br>ALSTON & BIRD, LLP<br>3201 Beechleaf Court<br>Suite 600<br>Raleigh, NC 27604<br>Telephone: 919-862-2200<br>Fax: 919-862-2260<br>Email: frank.hirsch@alston.com<br>**Counsel for Hickory Springs Manufacturing Company** | Kendall Millard<br>BARNES & THORNBURG LLP<br>11 S. Meridian Street<br>Indianapolis, IN 46204<br>Telephone: 317-231-7461<br>Fax: 317-231-7433<br>Email: kmillard@btlaw.com<br>**Counsel for Flexible Foam Products, Inc.** |
| William Isaacson<br>BOIES SCHILLER & FLEXNER LLP<br>5301 Wisconsin Avenue, N.W.<br>Suite 800<br>Washington DC 20015<br>Telephone: 202-237-2727<br>Fax: 202-237-6131<br>**Counsel for Jamestown Mattress Co., Inc. and Piazza's Carpet & Tile Shop, Inc.** | Gary S. Jacobson<br>LOVELL STEWART HALEBIAN JACOBSON LLP<br>61 Broadway, Suite 501<br>New York, NY 10006<br>Telephone: 212-608-1900<br>Fax: 212-719-4677<br>**Counsel for Robert Sims Enterprise, LLC dba Flooring America** |
| Bethany G. Lukitsch<br>MCGUIREWOODS LLP<br>901 Cary Street<br>One James Center<br>Richmond, VA 23129<br>Telephone: 804-775-4711 | Peter M. Ryan<br>COZEN O'CONNOR<br>1900 Market Street<br>Philadelphia, PA 19103<br>Telephone: 215-665-2130<br>Fax: 215-701-2157 |

| | |
|---|---|
| Fax: 804-698-2261<br>Email: blukitsch@mcguirewoods.com<br>**Counsel for The Carpenter Company** | Email: pryan@cozen.com<br>**Counsel for Foamex Innovations, Inc.** |
| Daniel G. Swanson<br>GIBSON DUNN & CRUTCHER LLP<br>333 South Grand Avenue<br>Los Angeles, CA 90071<br>Telephone: 213-229-7430<br>Fax: 213-229-6430<br>Email: dswanson@gibsondunn.com<br>**Counsel for The Woodbridge Group** | Charles E. Tompkins<br>SHAPIRO HABER & URMY LLP<br>53 State Street<br>Boston, MA 02109<br>Telephone: 617-276-2984<br>Fax: 617-439-0134<br>Email: ctompkins@shulaw.com<br>**Counsel for Alyanna Enterprises, Inc. (dba Mattress Maker)** |
| Edward G. Warin<br>KUTAK ROCK LLP<br>The Omaha Building<br>1650 Farnam Street<br>Omaha, NE 68102<br>Telephone: 402-346-6000<br>Fax: 402-346-1148<br>Email: edward.warin@kitarock.com<br>**Counsel for Future Foam, Inc.** | John K. Warren<br>FRESHFIELDS BRUCKHAUS DERINGER US LLP<br>701 Pennslyvania Avenue, NW<br>Suite 600<br>Washington DC 20004<br>Telephone: 202-777-4580<br>Fax: 202-777-4555<br>**Counsel for Vitafoam Products Canada, Ltd. and Vitafoam, Inc.** |
| Scottdel Inc.<br>c/o Louis A. Carson<br>400 Church Street<br>Swanton, OH 43558<br>**Defendant in all actions** | |

Dated:  September 21, 2010

Yolanda L. Berry

818576.1